1          **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF ARIZONA**

3
   **United States of America**,     )
4                                )
               Plaintiff,  )
5          vs.                      )
                      )  CR-12-00573-PHX-ROS
6          **Luis Hernandez-Flores, et al.**,  )
                      )
7                      Defendant.  )
                      )  January 28, 2013
8                                )  2:04 p.m.
  _____ )

9

10          **BEFORE:  THE HONORABLE ROSLYN O. SILVER, CHIEF JUDGE**

11          **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

12          MOTION HEARING

13          A P P E A R A N C E S

14          For the Government:
        **KAREN S. McDONALD, ESQ.**
15                  U.S. Attorney's Office
        40 North Central Avenue, Suite 1200
16                  Phoenix, AZ  85004-4408
        602.514.7500
17
   For the Defendant Hernandez-Flores:
18                  **CAMERON A. MORGAN, ESQ.**
        Law Office of Cameron A. Morgan
19                  4295 N. 75th Street
        Scottsdale, AZ  85251-3695
20                  480.990.9507/(fax) 480.990.9509

21          Official Court Reporter:
   **Elaine Cropper, RDR, CRR, CCP**
22          Sandra Day O'Connor U.S. Courthouse, Suite 312
   401 West Washington Street, Spc. 35
23          Phoenix, Arizona  85003-2151
   (602) 322-7249
24
   Proceedings Reported by Stenographic Court Reporter
25          Transcript Prepared by Computer-Aided Transcription

CR-12-00573-PHX-ROS, January 28, 2013

## P R O C E E D I N G S

(Court was called to order by the courtroom deputy.)

(Proceedings begin at 2:04.)

THE COURT:  Please be seated.

COURTROOM DEPUTY:  Criminal case number 12-573, *United States of America v. Luis Alberto Hernandez-Florez*, on for motion hearing.                                    02:04:05

MS. MCDONALD:  Karen McDonald for the United States.

THE COURT:  Thank you.

MR. MORGAN:  Good afternoon, Your Honor.  Cameron Morgan for Mr. Hernandez-Florez who is present and out of custody.  Also in the courtroom is his wife.                02:04:15

All right.  Is there any reason why this matter should be under seal?

MR. MORGAN:  That is the issue that I filed the motion.                                                           02:04:27

THE COURT:  I know that is the issue.  But the hearing?

MR. MORGAN:  May I address the Court, Your Honor?

THE COURT:  Yes.                                              02:04:33

MR. MORGAN:  Your Honor, the only reason this came up is because I was facing immigration and the Court and I didn't know exactly how I was going to approach the immigration court with the case half under seal and half not under seal.  That's why I filed this motion.                                        02:04:47

United States District Court

1    Counsel and I, I think, are on the same page.  It    02:04:48

2 should be either all one way or all the other.  Quite frankly,

3 from my standpoint, as more and more discovery comes out, I am

4 of the feeling that it should not be under seal, that we should

5 be free to discuss what I think are some important public    02:05:01

6 issues.

7    THE COURT:  And I was having a little trouble

8 following the sequence here and excuse me for that because I

9 know I was involved in some of that but we had the hearing

10 before the immigration court.  We had the hearing before Judge    02:05:20

11 Anderson and then the hearings before me.  And originally,

12 Mr. Cameron, you wanted a lot of the information the government

13 was giving you not under seal because you were reaching out to

14 other information that -- you don't need to stand unless you

15 choose to.    02:05:37

16    MR. MORGAN:  Well, I do.

17    THE COURT:  -- that might assist you on *Brady-Giglio*

18 matter.

19    And then your clients before the immigration judge,

20 some information comes out.    02:05:52

21    Whether or not it was meant to be sealed I can't

22 really tell, Miss McDonald, from what you responded.

23    But it's your position, Mr. Cameron, and you can

24 correct me, that the immigration court did not have enough

25 information to make a decision about your complaints -- whether    02:06:13

1  your client should be detained because he had been released by    02:06:24

2  Magistrate Judge Anderson on the underlying charges.  So

3  there's kind of a mess of what the immigration court had and

4  didn't have and some controversy between the two of you about

5  that matter.  Am I right about that?    02:06:48

6          MR. MORGAN:  Essentially, Judge, yes.

7          THE COURT:  Okay.  So, you're going to make it easier

8  for me.  The question is whether or not all of the information

9  or a lot of the information that you have been provided through

10  discovery and perhaps your own discovery should be sealed or    02:07:09

11  unsealed.  It's your position that the information should be

12  unsealed now?

13          MR. MORGAN:  Judge, I think at this juncture, after

14  receiving all of the information from the 2000 investigation of

15  Andrew Chambers, I think we almost have to unseal because this    02:07:28

16  was all public knowledge 12 years ago.

17          So --

18          THE COURT:  So it was public knowledge because --

19  when you say it was public knowledge, it was part of the

20  record?  It was -- there was a trial?  He testified.  He was    02:07:39

21  cross-examined and so the impeachment was made public.  Is that

22  what you're saying?

23          MR. MORGAN:  Yes, Your Honor.  Also pursuant to a

24  public records request, public records request litigation,

25  Connie Chung one-hour report on this particular informant,    02:08:03

United States District Court

1    Andrew Chambers and a DEA 175-page report on his activities.    02:08:07

2    All of that stuff has come out.

3              THE COURT:  Okay.  Coming?

4              MR. MORGAN:  It's already out.

5              THE COURT:  Okay.  It's already out.  You have the    02:08:19

6    DEA report and the DEA report has been made public?

7              MR. MORGAN:  I believe so, yes, Judge, because I got

8    it from Dean Stewart who is the attorney who initiated all of

9    the investigations in 2000.  He had it as part of his public

10   records request.    02:08:38

11             THE COURT:  Okay.

12             Ms. McDonald, now, what's your position?

13             MS. MCDONALD:  Well, Your Honor, the fact that all of

14   this material that the government turned over previously in

15   discovery was public record was something that was already    02:08:51

16   known at the time that the government requested the protective

17   order and the Court granted the protective order.  And the

18   government's argument was that the fact that he is being used

19   again ought to be kept under a protective order for his safety.

20             THE COURT:  Okay.  And I -- okay.  I'm missing    02:09:14

21   something here, though.  You're now telling me that the

22   protective order I granted protected something that was public

23   record?

24             MS. MCDONALD:  Your Honor, the --

25             THE COURT:  If I did, then I didn't understand your    02:09:29

1  argument and I must have swept the broom too broadly because I    02:09:32

2  certainly didn't mean to protect public information, only that

3  my understanding was that there was information that wasn't

4  public that may have harmed him because he was an informant in

5  this case.                                                        02:10:02

6          So despite that, let's put that aside.  If I made a

7  mistake there or misunderstood what you were asking, let's now

8  deal with this issue.

9          MS. MCDONALD:  Because at the time, Mr. Morgan was

10  arguing that it should not be kept under a protective order.    02:10:20

11  The Court granted the protective order.  Now in his instant

12  motion, Mr. Morgan wanted to have the Court's protective order

13  go broader and to cover all hearings.

14          And I think counsel would agree that the motion was

15  made for the purpose of keeping from the immigration court the  02:10:41

16  Saul Sandoval's detention hearing transcript laid out more

17  detail about the case in a way that the immigration court might

18  be able to use it in order to make a bond determination as to

19  the defendant.  And so that has become water under the bridge

20  because the immigration court did not have use of the           02:11:06

21  transcript when they went forward with their bond hearing.

22  They granted bond and Mr. Hernandez-Florez is out.

23          THE COURT:  So that's moot.

24          MS. MCDONALD:  So the government argues that the

25  instant motion is moot except that to the extent that           02:11:19

1  Mr. Morgan is asking specifically for all hearings to be sealed  02:11:21

2  in this case, the United States just has a general objection to

3  that.  The Department of Justice has clear policies that we're

4  to promote public hearings.

5       THE COURT:  And here's where I'm misunderstanding.  I  02:11:41

6  didn't receive a reply, Mr. Cameron, from you.  So that's why

7  I'm trying to dig through this or work through it.  So what

8  hearings, Mr. Cameron?  Is it your position that hearings

9  should be sealed?

10       MR. MORGAN:  Judge, it's now my position that nothing  02:11:58

11  should be sealed.

12       THE COURT:  Oh.  Okay.  Well, then, we're done.  Did

13  you talk to each other before I came on the bench?

14       MS. MCDONALD:  We did, Your Honor.

15       THE COURT:  Okay.  So nothing should be sealed and so  02:12:07

16  the motion for protective order should be denied as moot.

17       MR. MORGAN:  Yes.

18       MS. MCDONALD:  For expansion of the protective order.

19       THE COURT:  Expansion?

20       MS. MCDONALD:  Would you agree?  Because the United  02:12:23

21  States still maintains its request to have the information that

22  identifies the cooperating source here in this case in the way

23  that all of these materials do.

24       Now, what I had originally disclosed to Mr. Morgan

25  was, admittedly, most of the material that was out there in the  02:12:40

1  public as a result of investigative reporting and maybe some  `02:12:48`

2  FOIA requests, too.  But the United States still maintained

3  that in this case, there existed very little purpose to have

4  Mr. Morgan free to broadcast this --

5        THE COURT:  But broadcast it, he's not getting on TV.  `02:13:10`

6        MS. MCDONALD:  No.  And the way we crafted --

7        THE COURT:  Okay.  Let me see if I understand.  Let

8  me bring you up to where I am.  Anything that is public record

9  will not be under seal.  There is no reason for that and not

10  only is there no reason, I think it would likely be in  `02:13:29`

11  violation of the law, because there's a First Amendment issue.

12  But, secondly, what else is there that you have that you think

13  needs to be protected other than public records in order to

14  protect the safety of your informant?

15        MS. MCDONALD:  Well, Mr. Morgan has now made a  `02:13:56`

16  request that I have been endeavoring to fulfill for him that

17  involves recent criminal history check, payment records, recent

18  payment records of the CS since he has come back on --

19        THE COURT:  What in the world is wrong with the

20  criminal history?  Why wouldn't he be entitled to that?  `02:14:13`

21        MS. MCDONALD:  He is entitled to it.  We just want it

22  under the protective order as we ask for that with respect to

23  all cooperating sources.

24        THE COURT:  But you don't want it under the

25  protective order anymore; right?  `02:14:30`

1    MR. MORGAN:  Judge, I don't think there should be any  02:14:31

2 protective order on anything this guy has done.

3    THE COURT:  Okay.  What is it you want protected

4 then?

5    MS. MCDONALD:  Any information -- well, the  02:14:39

6 government still maintains its original request for all CS

7 information to be under protective order.  But if the Court is

8 unwilling to do that, when we ask for all information about his

9 use now since about 2008 --

10    THE COURT:  His use.  Whose use?  02:15:00

11    MS. MCDONALD:  By the DEA as a cooperating source

12 now.

13    THE COURT:  And you're saying -- the "his," the

14 pronoun is your confidential informant?

15    MS. MCDONALD:  Yes.  02:15:13

16    THE COURT:  Since two thousand and what?

17    MS. MCDONALD:  Around 2008 was when the DEA, I

18 believe, agreed to begin using him.  And we're endeavoring to

19 collect up what records there are that we're willing to

20 disclose with respect to his renewed use by the DEA.  02:15:30

21    THE COURT:  Now, is any of that public?

22    MS. MCDONALD:  No.

23    THE COURT:  And why is it to be protected?

24    MS. MCDONALD:  Because he's a cooperating source.  He

25 may have a very unattractive, unsavory and highly impeachable  02:15:40

1  history behind him but, nevertheless, the DEA has begun using    02:15:49

2  him as a source.  The United States has charged a case based

3  upon his participation as a cooperating source.

4          THE COURT:  When you say you have indicted him, is it

5  in a case other than this one?    02:16:10

6          MS. MCDONALD:  I think that there have been -- there

7  may have been other indictments issued on this --

8          THE COURT:  Okay.  Ms. McDonald, I'm not going to

9  give you a blanket protective order and I will take the blame

10 for misunderstanding what may have occurred and what I did the    02:16:29

11 last time, but I never would have meant to grant a protective

12 order of public information.  So we're beyond that now.  But

13 now you want protected any information relating to his

14 involvement in an investigation that began in 2008.

15         MS. MCDONALD:  Not in a particular investigation,    02:16:56

16 Your Honor.  He was -- the DEA began using him as a

17 confidential source again in 2008.  He did not -- this

18 confidential source did not get used by the District of Arizona

19 until this case several years down the road.

20         THE COURT:  So how much are you going to parse out of    02:17:15

21 this use by DEA in other cases that is somehow not relevant

22 impeachment?  What kind of protection does he need?  Are you

23 talking about ongoing investigations that have not surfaced?

24         MS. MCDONALD:  There are some of those.

25         THE COURT:  You know, I'm not going to grant your    02:17:39

1    motion for protective order on anything else.  We've now          02:17:41

2    exposed everything.  And if you have another motion for

3    protective order that would establish that he needs protection

4    for his involvement in other cases when they started using him

5    in 2008 and forward, then that has to be a very specific and      02:18:00

6    clear filing with the Court.

7         Now, if you're worried about exposing information and

8    then filing the report, then that portion or that motion --

9    that portion of the motion can be under seal.  But, you know,

10   I'm going to have to look very closely at what to seal and what   02:18:25

11   to unseal because it's quite clear to everyone that he's now an

12   informant.  Right?  He's presently an informant?

13        MS. MCDONALD:  Yes, Your Honor, although I would

14   argue that I don't believe that it is necessarily public

15   knowledge that he is in use again.                                02:18:42

16        THE COURT:  So is that completely -- no one knows

17   about that?  Because if that's the cases, then I don't know why

18   you would be here because Mr. Cameron -- I'm not going to

19   exclude him from publicizing the fact that this informant is

20   now working for DEA.                                              02:19:03

21        MS. MCDONALD:  Well, the United States had no

22   objection whatsoever and the Court's original protective order

23   said that he was free to disseminate those materials regarding

24   the CS to anyone related to the defense team or anyone involved

25   in preparing the defense of this defendant.                       02:19:18

United States District Court

1    What we were asking was that he merely be limited to    02:19:23

2  public dissemination for no purpose related to the defense of

3  this case.  The United States was asking for a fairly narrow

4  thing and the Court ruled with me originally on that concept.

5  We acknowledge that a lot of that material was already out in    02:19:41

6  the public realm.  We just saw no purpose other than beyond the

7  defense needs.  We don't seek to hamper in any way the defense

8  needs and said, at the time of the original protective order

9  hearing, that we were happy to have Mr. Morgan be able to

10  consult freely with others who had firsthand knowledge of the    02:20:02

11  original CS investigation and any potential experts on him.

12    THE COURT:  How in the world -- some of that

13  information is public.  Some of it is not.

14    So what are you asking Mr. Cameron to do?  It doesn't

15  sound like he's about to go to the newspaper or tell third    02:20:23

16  parties about information and it wouldn't make any difference

17  if it was, in fact, public information.

18    So I have no idea, Miss McDonald, what portion of

19  this information after 2008 really deserves protection and

20  protection in the way you're speaking of it?    02:20:51

21    For example, you're saying that you don't mind if

22  Mr. Cameron uses it for cross-examination purposes but he also

23  mentioned, and I remember this at the other hearing, he may

24  want to reach out to others that may have had experience with,

25  or contact with, the confidential source -- informant.  If    02:21:17

1    that's the case, I'm going to allow him to do it.          02:21:23

2         MS. MCDONALD:  The present protective order in place

3    allows him to do that.

4         THE COURT:  So what have we -- how does he know

5    what -- Mr. Cameron, how does Mr. Cameron know what he can't   02:21:33

6    do?

7         MS. MCDONALD:  I think the limitations are clearly

8    spelled out in the protective order that was issued by the

9    Court.

10        THE COURT:  But, I mean, so you have given him a lot   02:21:47

11   of information.  Some of it is public and some of it is not.

12   What can't he do, there's a lock of time, 2008 to 2013, and

13   does he know what that information -- do you know what that

14   information is, Mr. Cameron, that you cannot use or you cannot

15   disseminate?                                                  02:22:10

16        MR. MORGAN:  Judge, I have almost no information for

17   the 2008 forward period of time.  All of the information I have

18   is from '85 to 2000 and --

19        THE COURT:  So what are we talking about,

20   Ms. McDonald?                                                 02:22:24

21        MS. MCDONALD:  Well, Your Honor, I would remind the

22   Court that we're here on Mr. Morgan's motion.

23        THE COURT:  Wait.  The motion is over.  Now we're

24   talking about the protective order and we're talking about what

25   needs to be protected.  Mr. Cameron has said everything should  02:22:34

1  be unprotected.                                                    02:22:40

2       Now, you have gone back and so we're done with that

3  and I understand where he was originally and that this was for

4  the purpose of allowing additional information not to be used,

5  but it's moot so now we're going back to the protective order.   02:22:58

6  Both of you have mentioned some of it is public.  The

7  protective order doesn't make any sense to me if it's public

8  and I never intended that.  I thought it was all private but

9  that's my fault.

10      Now we're talking about 2008.  Are you going to be          02:23:17

11  turning over information from 2008 forward?

12      MS. MCDONALD:  I am, Your Honor.  I have already

13  turned over some and I am working on additional material and

14  it's the government's position that, you know, when a CS is

15  involved, we just ask that, you know, Mr. Morgan be restricted   02:23:33

16  from going to the press and trying the case in the press and

17  revealing, you know, all of the CS material and impeachment

18  material he's --

19      THE COURT:  If he has the information anyway, all

20  you're asking him is not to go to the press?                     02:23:49

21      MS. MCDONALD:  We're asking him to be restricted in

22  the way that the current protective order that is in place

23  restricts him.

24      THE COURT:  I will tell you that I misunderstood my

25  protective order and if you want to file another motion to      02:24:01

1  protect this material after 2008 that you intend to turn over      02:24:06

2  to Mr. Morgan, you're going to have to be very explicit about

3  it.  I am not going to grant a protective order in the context

4  of this case generally.  I do so in order to protect somebody

5  who is an informant for a short period of time although he's      02:24:23

6  eventually going to have to testify.  And there may be

7  information or he might be harmed but I assumed also at the

8  outset this man was at risk.

9        MS. MCDONALD:  Your Honor, it's still the

10  government's position that he is.                                  02:24:43

11        THE COURT:  Well, you better provide me the reason

12  why because it doesn't -- I can't say that on the face of it

13  and I'm not going to grant a protective order concerning a

14  confidential informant and source when there's an investigation

15  ongoing, it's not just the source or the informant, and          02:24:59

16  everybody knows he's been an informant and source forever.  And

17  now it's clear he's doing it again.

18        It's usually the investigation that you're trying to

19  protect.  I have no idea what the investigations are.  Some of

20  them are public.  Some of them are not.  Sometimes disclosing     02:25:17

21  information in the investigative report may harm other people,

22  so the order of protection that I granted is vacated.  And the

23  United States government -- I will entertain any other motion

24  of anything in particular that requires that information you

25  are providing to Mr. Cameron and all of the defense needs        02:25:44

United States District Court

1    protection.                                                        02:25:48

2           And if you do that, you need to redact or tell me

3    which portions you want redacted in those reports and why.  And

4    why in particular -- and who needs protection and why

5    protection is necessary?                                           02:26:02

6           As I said, you have an ongoing investigation.

7    Perhaps that is a reason to protect.  Okay.

8           And we are adjourned.

9           COURTROOM DEPUTY:  All rise.

10          (Whereupon, these proceedings recessed at 2:26 p.m.)

11                         *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, ELAINE M. CROPPER, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

        I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

        DATED at Phoenix, Arizona, this 1st day of February, 2013.


                        s/Elaine M. Cropper

                        _____
                        Elaine M. Cropper, RDR, CRR, CCP




                United States District Court