**CAMERON A. MORGAN**
**Attorney at Law**
4295 N. 75th St.
Scottsdale, AZ  85251
(480)990-9507 ♦ Fax (480) 990-9509
*Arizona State Bar No. 006709*
e-mail:  camerona.morgan@hotmail.com
Attorney for Defendant Luis Hernandez-Flores

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **United States of America,** | No.  **CR-12-573-01 PHX ROS** |
| Plaintiff**,** | |
| **v.** | **MOTION TO DISMISS AND/OR PRECLUDE TESTIMONY** |
| **Luis Alberto Hernandez-Flores,** | **(Evidentiary Hearing/Oral Arg Requested)** |
| Defendant**.** | |

Defendant, Luis Alberto Hernandez-Flores, by and through undersigned counsel, respectfully requests that this Court enter an order dismissing the indictment or, in the alternative, preventing the government from utilizing the testimony of witness Andrew Chambers in any way.  This motion is based on the fact that Mr. Chambers is a paid informant who the DEA alleges committed perjury in at least 16 cases while working for the department between 1985 and 2000 and engaged in income tax fraud and/or the non-payment of taxes on millions of dollars of income from the DEA and other agencies on multiple occasions in the 1990s.  Mr. Chambers was fired in 2000 after national media exposure of his history and a one hour 20/20 television program in which the DEA represented that he would never again be allowed to work for the department.  However, the DEA rehired Mr. Chambers, is using him in investigations all over the country, is again paying him exorbitant amounts of money and refuses to provide discovery about what he is up to and where he is testifying, what he is

being paid and whether he is again engaged in income tax fraud. Defendant contends that there is no way that the court can protect against fraud and/or perjury by this witness and the government has committed misconduct by rehiring and employing him in investigations where his testimony may be critical to the determination of the guilt or innocence of an individual. Defendant submits that under due process or the supervisory powers of the court that it should either dismiss the indictment or preclude Mr. Chambers from testifying.

This motion is based on the attached Memorandum of Points and Authorities incorporated by reference herein.

### *MEMORANDUM OF POINTS AND AUTHORITIES*

The facts in this case are that a DEA taskforce was investigating the defendants in 2010 and obtained a state wiretap. Based on intercepted communications, a Maricopa County indictment was obtained against them and others.  The wiretap was suppressed and the case was dismissed when Judge McMurdie found that key information concerning probable cause for the wiretap affidavit was provided by a Glendale police officer he specifically found to be not a credible witness. The case agent in this case, Dustin Gillespie, was one of the affiants for the wiretap in state case who received and reported information from the offending officer.

Agent Gillespie continued to investigate Defendant Hernandez-Flores.  Following the kidnapping and rescue of the defendant's wife, Agent Gillespie attempted to recruit Hernandez-Flores, without any luck.  Pole cameras were placed at his business and home in the fall of 2011.

Eventually super confidential source/con artist Andrew Chambers was brought in to attempt to set up a "buy" from the defendant.  The initial contact and discussions between Chambers and the defendant are disputed.  The government claims that Hernandez-Flores

2

eventually invited Chambers over to his house, they discussed a deal for heroin and that deal was eventually consummated in a parking lot when Defendant Sandoval delivered a kilo of heroin to Chambers.  The government alleges that it has tapes of several meetings between the defendants and Chambers as well as the delivery but admits that there was no tape of the first meeting. Based on the government's historical misconduct in this investigation and with Chambers the defendants do not concede the accuracy of any tapes or any transcripts made therefrom. Chambers testimony is necessary to establish foundation for the initial contact and the persons present at the meetings and/or telephone calls.

The issues surrounding the credibility of Mr. Chambers were previously brought to the attention of the court in his motion for the redetermination of his release conditions and on other occasions when discussing the status of the case. A key issue has been getting any discovery concerning what Chambers has been doing since he was rehired by DEA in 2008.

 Rather than citing the entire history of Mr. Chambers' sordid past as an informant defendant will simply summarize the 157 page Management Review: Utilization of CS-84-036739, the DEA report on Chambers that detailed his history, arrests, perjury and income tax evasion and attempted to explain how the DEA could turn a blind eye to the perjury of one of its most successful informants in light of court decisions that noted his perjury and IRS tax liens for non-payment.  See Exhibit 1, DEA Management Review Report attached hereto. The introduction to the report at p. 1 and the Conclusion beginning at p. 101 pretty much summarize his history:

> 1) Between1985 and 2000 he was involved in 280 investigations across the U.S.;
>
> 2) He was paid approximately $1.9 million by the DEA alone;

CAMERON A. MORGAN, ESQ.
4295 North 75ᵗʰ Street
Scottsdale, Arizona 85251
(480) 990-9507

3

3) He testified in 25 DEA cases and testified falsely in at least 16 of them;

4) His first known perjury occurred in U.S. v. Springer in 1985 and his last known perjury occurred in Florida v. Zamora in July 1999;

5) The first DEA agent report of perjury to a supervisor occurred in 1988 when Chambers admitted on the stand in U.S. v. Ransom that he had lied in prior cases;

6) He was arrested for solicitation of prostitution in Denver in 1995; the AUSA handling his cases found out about his perjury reported in *U.S. v. Duke*, 940 F.2d 1113 (8th Cir. 1995) and dismissed 5 cases with prejudice; Chambers pled guilty to the solicitation charge. He was arrested again for solicitation in Houston in 1998 but the DEA was able to get the charges dismissed even though he bench warranted several times;

7) He failed to report all of his DEA income and failed to pay taxes on it;

8) According to the report "It is the responsibility of the DEA to advise prosecutors about any information they have that would impact the credibility of a CS." P. 106;

9) Chambers "was able to testify falsely in one place with the agents in another subsequent case not being aware of the previous false testimony. The problem was systemic. …Chambers was able to exploit, either wittingly or unwittingly, that weakness in the DEA CS system." P. 107.

Chambers' disclosed history up to 2000 includes thirteen arrests for traffic offenses, domestic violence, criminal fraud charges that were dismissed with DEA involvement, identity theft, solicitation of prostitution in Colorado and Texas while working for DEA, false information to police officers in both of the prostitution cases, perjury in sixteen cases and failure to pay taxes. There may also be allegations that he pilfered drug buy money in Los Angeles. According to DEA, that agency paid him $1.9 million through 2001 but other agencies also paid him substantial sums and the estimates of total payments through 2001 are in the range of $4 million. It is unclear whether all of this income was reported in his IRS returns in the 1990s but it is certain that he lied on the stand about owing the IRS money.

CAMERON A. MORGAN, ESQ.
4295 North 75ᵗʰ Street
Scottsdale, Arizona 85251
(480) 990-9507

If Chambers were nothing more than a run of the mill criminal that would be one thing. But, both Chambers and his defenders in the DEA brag that he is a con man extraordinaire who rents expensive cars, flashes bling and cash and hustles criminals on the streets in drug deals. See Exhibit 2, a DVD containing the video of the 20/20 report on Chambers; this exhibit will be hand-delivered to the Court and the AUSA.  However his hustling did not stop there.  According to the DEA management report, the evidence uncovered by Attorney Dean Steward and 20/20, Chambers also hustled DEA agents, AUSAs, defense attorneys, judges and juries.  He readily admits that he lied extensively about his background and history to protect and bolster his credibility in court in case after case but justifies this as perjury about unimportant matters. See Exhibit 2.

The DEA is equally at fault since it aided and abetted his conduct and claimed it knew nothing about his perjury at the management level even as that perjury was reported by its agents, AUSAs and the courts.  See *U.S. v. Duke*, 940 F.2d 1113 (8ᵗʰ Cir. 1995) and *U.S. v. Milsaps*, 157 F.3d 989 (5ᵗʰ Cir 1998).  Even at the end of Chamber's first stint with DEA in 2000, when it became clear that the DEA had withheld Brady material from prosecutors and defense attorneys alike, the DEA stonewalled attorney Dean Steward's freedom of information request for records of testimony, payments, arrests and DEA intervention on Chambers' behalf.  The DEA was ordered to produce those records in ***Bennett v. DEA***, 55 F.Supp.2d 36 (D.C. 1999).  Only then was the full extent of Chambers' conduct unveiled and reported in the national press.

At that point AUSAs nationwide were left trying to explain how a DEA confidential source could get away with perjury in 16 cases and why there was such a spotty record of

5

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

Brady disclosure across the U.S. concerning Chambers' record of arrests, tax evasion and perjury.  Numerous cases were dismissed.  One of the most disturbing moments in this regard, since it foreshadows what has occurred here, is the exchange between AUSA Stephan Wolfe and the panel in *U.S. v. Bennett*, 219 F.3d 1117 (9th Cir. 2000), a copy of the partial transcript is attached hereto as Exhibit 3.  In that exchange the government admitted that "the failure to disclose Chamber's backround was a shameful dereliction of government duty…," and that Chambers was "undefendable." Trans. At p. 1 and 5.  Judge Kozinski mused that the government needed a "Kojayan sort of lesson to sort of serve as a constant reminder so that we don't really want to be here again and so we're going to take steps to make sure these kind of things don't happen."  Trans p. 5-6.  The reference is to *U.S. v. Kojayan*, 8 F.3d 1315 (9th Cir. 1992) where the government withheld a cooperation agreement of a co-conspirator and then misrepresented the matter to the jury. The court vacated the conviction and remanded to the district court to determine whether to retry the defendants or dismiss the indictment as a sanction for the government's misbehavior.

And yet here we are, again dealing with the horrific Chambers record and the DEA cover-up that has been going on since 1985 when it first rescued him from felony charges in Kentucky by sending a letter to the judge about his role as a DEA confidential source and requesting that his bench warrant be quashed.  See Exhibit 4, Dean Steward's summary regarding Chamber's history at Bates page 1783.  The most disturbing aspect of the case is the DEA insistence that the Chamber's history be kept secret not only from defense attorneys but also from AUSAs so that they could not disclose it.  The lack of disclosures is noted in the interviews of the AUSAs who had cases with Chambers in 2000 and in the Management

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

Report, Exhibit 1.  In that report, at page 89, it is stated that DEA initially refused to give a copy of the report on Chambers to the USAO for Florida, then relented and gave a copy with a letter requesting that the "USAO not disclose the book in discovery responses."  According to the report, the DEA sent "the same or similar information to prosecutors in various jurisdictions that had prosecutions pending in which Chambers was scheduled to appear as a witness." Requests for non-disclosure went to attorneys in Los Angeles, South Carolina, and Florida even after the D.C. district court ordered disclosure of the same material on June 30, 1999 pursuant to Dean Steward's FOI request.  The DEA has clearly demonstrated historically that it has a tendency to stonewall about Chambers first, refuse to abide by court orders second and cover-up its actions whenever possible. And by the way, the "book," i.e. the Management report, was not disclosed in this case; undersigned counsel obtained the copy herein, with missing pages, from Dean Steward.  It appears that the DEA is still demanding that it not be disclosed in discovery.

In this case the defense has been requesting disclosure of the Brady information on Chambers since the inception of this case and has been provided with some, primarily related to Chambers history from 1985 to 2000, but very little concerning anything since.  Initial discovery with some of the 1985-2000 impeachment information on Chambers was provided by the government on 7/20/12.  Undersigned counsel responded by e-mail on 8/1/12 and asked for information on what Chambers was doing from 2000 to the present.  AUSA McDonald responded that she sent our request to the DEA by e-mail dated 8/9/12.  By letter dated 8/15/12 defendants outlined their position on Chambers and requested a meeting with the government.  A meeting occurred however the case was not resolved.  A second Brady

letter was sent out on 12/14/12 again requesting specific information related to Chamber's more recent activities. The government's partial response to the request dated 12/21/12 showed that Chambers has been paid $18,800 for the couple of days of work for he did in this matter as "PI," which the Management Report calls the purchase of information, and it provided a redacted report that claims Chambers was on another case when he "accidently" ended up sitting in the parking lot at the defendant's small Mexican store in south Phoenix. Since that time defendants have been informed by the AUSA that DEA has not been forthcoming with any further information despite her requests. See Exhibits 5-10, the letters and e-mails referenced above in chronological order.

Undersigned counsel informed the court of the discovery issues in this case early on and was informed by the court that it was not necessary for the defendant to file a motion to compel because the obligations under Brady required full disclosure of exculpatory and impeachment evidence. We have not received that disclosure and, based on past history, believe that the DEA will not allow all of the Brady material to be disclosed.

Another matter that should be of concern to the court are the misrepresentations that were made by Agent Gillespie in the search warrant affidavit dated April 4, 2012, as well as in affidavits for two GPS tracking orders, that he filed with the court in this matter. In these affidavits Agent Gillespie alleged under oath that "On November 22, 2011, reliable DEA CS met Luis Hernandez-Flores in the parking lot of the Carneceria/Supermarket business at location 2. The contact occurred by happenstance and was unplanned by law enforcement." See Exhibit 11, 4/4/12 Gillespie affidavit in support of his request for a search warrant attached hereto. The government recognizes that the "reliable DEA CS" statement is a

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

8

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

misrepresentation and has unilaterally announced that it will not seek to use any evidence obtained as a result thereof.  These misrepresentations point out the danger of dealing with Chambers; his penchant for perjury is infectious to law enforcement.

There is also the matter of the "integrity of government agents and prosecutors not to introduce untrustworthy evidence into the system." ***Berger v. U.S.,*** 295 U.S. 78 (1935) as cited in ***U.S. v. Bernal-Obeso***, 989 F.2d 331 (9th Cir. 1993).  Undersigned counsel has been informed by a criminal supervisor of the U.S. Attorney's Office that the decision to allow Chambers to work in this district was made at the supervisory level of the U.S. District Attorney's Office with full knowledge of his prior perjuries and criminal record. He was supposed by be closely monitored such that every contact would be recorded, a procedure that was not followed in this case. Not only wasn't Chambers properly monitored but neither was the case agent who intentionally and knowingly misrepresented under oath that Chambers was "reliable."

Finally there is the indictment in this case. During the course of the grand jury proceeding the government presented the testimony of Agent Gillespie without informing it of his misconduct and without proper disclosure of the extent of the misconduct of Chambers. See Exhibit 12, Transcript of the Grand Jury proceedings of 3/20/12.  At the end of the proceedings that government made a partial disclosure that the CS was "deactivated and placed in hiatus" for "statements that he made during an arrest for solicitation of a prostitute and statements he made under oath concerning taxes." The witness agreed that Chambers "was called upon to testify in another case that he had been involved in and essentially made some of these false statements while he was being cross-examined during the trial of that

case." The grand jury was informed that he was "not used" for approximately five years and was then reactivated.  It was also told that the decision to use Chambers was discretionary with each "office" and that his role was minimal because of the alleged tapes of the conversations.  See Exhibit 12 at pp. 41-43.  Noticeably lacking from this disclosure were the 13 arrests, DEA intervention in his criminal cases, income tax issues, 16 cases with perjured testimony, a complete pass on his criminal conduct by DOJ and that Chambers is necessary to the government's case at trial.

*LEGAL ARGUMENT:*

The court may dismiss an indictment under either of three theories; First, a district court may dismiss an indictment on the ground of outrageous governmental conduct if the conduct amounts to a due process violation or second, if the conduct does not rise to the level of a due process violation,  the court may nonetheless dismiss under its supervisory powers. *U.S. v. Barrera-Moreno*, 951 F.2d 1089 (9th Cir. 1991); *U.S. v. Chapman*, 524 F.3d 1073 (9th Cir 2010).  Under the supervisory powers clause an indictment may be dismissed to remedy a constitutional or statutory violation, to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury or to deter future illegal conduct. *U.S. v. Barrera-Moreno*, supra.

In addition, the court may dismiss an indictment under due process if the indictment is based in part on perjured testimony that is material before jeopardy has attached. *U.S. v. Basurto*, 497 F.2d 781 (9th Cir. 1974).

"The dignity of the United States Government will not permit the conviction of any person on tainted testimony." *Mesarosh v. U.S.,* 352 U.S. 1 (1956). "By definition criminal

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime and from lying under oath in the courtroom. " *U.S. v. Bernal-Obeso*, supra.

This case presents the issue of whether the court will allow the government to present potentially tainted testimony from an avowed serial perjurer in the pursuit of a conviction in this case.  Ordinarily the credibility questions would be answered by the jury and an ordinary run of the mill perjurer would be allowed to testify.  *U.S. v. Stinson*, 647 F.3d 1196 (9th Cir. 2011). But this is a witness who has proven that he absolutely no regard for the oath and the government has repeatedly failed or refused to provide necessary Brady disclosure. At some point the danger to the integrity of the court is simply too great to allow this known and admitted perjurer to testify.

He has, in essence, an open ended grant of immunity because the government has refused to take any criminal action against him in the face of its own evidence that he has committed perjury in at least sixteen prior cases.  It has completely abrogated its role "to manage and carefully watch" it's informant and instead presents "tainted testimony" in the form of false affidavits to the court and by presenting testimony that is less than truthful to the grand jury concerning his credibility and reliability.

**SUPERVISORY POWERS DOCTRINE:**

The supervisory powers doctrine allows the court to dismiss an indictment to remedy a constitutional or statutory violation, to protect judicial integrity by ensuring that a conviction

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

rests on appropriate considerations validly before a jury or to deter future illegal conduct. *U.S. v. Hastings*, 461 U.S. 499 (1983). These factors are all present in this case.

The Chambers history is replete with past instances of perjury as the DEA Management Report acknowledges. It is also replete with DEA misconduct in failing or refusing to provide Brady material to prosecutors and defendants. These constitutional and statutory violations meet the threshold requirement of *Hastings.* See *U.S. v. Simpson II*, 927 F.2d 1088 (9th Cir. 1991). Violations also occurred in this case with the case agent filing affidavits containing misrepresentations and the grand jury being presented misleading information about Chambers.

The court may also invoke supervisory powers to preserve judicial integrity. Nothing is more important to judicial integrity than for the court to protect against the admission of tainted evidence. Under the circumstances here, it is appropriate for the court to take whatever action is necessary to prevent the use of perjured testimony even to the extent of dismissal of the indictment or the suppression of testimony.

The court may also consider whether it should invoke the doctrine in order to deter future illegal conduct by both Chambers and the DEA. Here, there is a history of past conduct that could be deterred by appropriate sanctions. Defendant submits that Chambers is such a loose canon that he should never be allowed to testify again in a courtroom. The fact that he is being used in multiple cities simply increases the risk that he will continue to exploit the system to the detriment of both defendants and the courts as the DEA acknowledged in it's report. If the government will not reign him in then the court must.

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

Based on the foregoing defendant respectfully requests that the court order the indictment dismissed or, alternatively, that Chambers be barred from testifying in this matter pursuant to the court's supervisory powers.

**DUE PROCESS:**

A due process violation occurs when the conduct of law enforcement officers is so grossly shocking and so outrageous as to violate the universal sense of justice. *U.S. v. Ramirez,* 710 F.2d 535 (9th Cir 1983). A violation can occur when the government engineers and directs a criminal enterprise. *U.S. v. Smith*, 924 F.2d 889 (9th Cir 1991).

This case tests the limits of due process in the continued use of an informant engaged in criminal conduct.  This issue was addressed by the court in *U.S. v. Simpson I*, 813 F.2d 1462 (1987) where the court held that allowing a prostitute/heroin addict to continue her trade and drug usage while working for the FBI in a drug investigation did not violate due process. However, the court also stated that there are some lines that can't be crossed such as instigating robberies and beatings in order to gather evidence against other criminals. *Hampton v. U.S.,* 425 U.S. 484 (1976).

Perjury, in the abstract, is not particularly shocking.  However, when it is practiced by a professional con artist on the scale that exists herein as part of a money making scheme with the knowledge and assistance of the government, it is shocking.  The fact that Attorney General Reno fired him in 2000 and then he was rehired for undisclosed reasons is disturbing. The fact that DEA agents are representing him to the courts as a reliable informant is reprehensible.  And the failure of the DEA to disseminate current information about his rehire, cases in which he is testifying, payment, income taxes or any other matter that relates

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507

13

to his credibility in light of his history of perjury and income tax issues is a violation of our rules and the constitution.

To borrow the phrase, it is the totality of the circumstances that makes this grossly shocking and outrageous. Defendant requests that the court order that the indictment be dismissed under the due process clause.

**DUE PROCESS-GRAND JURY PROCEEDINGS**

Under *U.S. v. Basurto*, 497 F.2d 781 (9th Cir. 1974) the court can dismiss an indictment if it is based on partially on perjured testimony that is material when jeopardy has not attached.  The government is not required to present exculpatory evidence but it may not mislead the grand jury.  *U.S. v. Williams,* 504 U.S. 32 (1992).

In this case the defendant contends that the evidence presented to the grand jury concerning the perjury of Chambers and his role in the case was misleading and material. Informing the grand jury that Chambers had been caught by the DEA committing perjury in 16 cases and fired is certainly a lot more shocking than intimating that this only occurred once.  And, since this entire case was launched as a result of his initial contact and claims of drug related conversations with the defendant, his credibility was certainly at issue.  Finally, the only way that the defendant could be identified as a participant in any conversation was through identification by Chambers.  Therefore, contrary to the presentation made to the grand jury, Chambers was essential to the government's case.

Based on the foregoing Defendant requests that the court order the indictment dismissed.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*CONCLUSION:*

Defendant respectfully requests that the court invoke either its' supervisory powers or due process and order that 1) that the indictment is dismissed, or alternatively, 2) that Chambers is precluded from testifying.

Respectfully submitted this 21th day of May, 2013.

*/s/Cameron A. Morgan*
Cameron A. Morgan
Attorney for Defendant Hernandez-Flores

**Certificate of Service**
I hereby certify that on May 21, 2013,
I electronically transmitted the foregoing
document to the Clerk's Office using the
CM/ECF System for filing.

COPY of the foregoing e-mailed this
28th day of January, 2013, to:

The Honorable Roslyn O. Silver
silver_chambers@azd.uscourts.gov

AUSA Karen S. McDonald
karen.mcdonald@usdoj.gov

Brian Russo, Esq.
lawoffice1212@hotmail.com
bfrusso@att.net

By */s/ Dawn-Marie Kenney*

CAMERON A. MORGAN, ESQ.
4295 North 75th Street
Scottsdale, Arizona 85251
(480) 990-9507